S

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORIGA
MACON DIVISION

| UNITED STATES OF AMERICA | : | INDICTMENT |
|---|---|---|
| | : | |
| v. | : | UNDER SEAL |
| | : | |
| EMILIYA RADFORD | : | CRIMINAL NO. 5:23-CR-_____ |
| | : | |
| | : | VIOLATIONS: |
| | : | **18 U.S.C. § 1344(2)** |
| | : | **18 U.S.C. § 1343** |
| | : | **18 U.S.C. § 666(a)(1)(A)** |
| | : | **18 U.S.C. § 981(a)(1)(C)** |
| | : | **18 U.S.C. § 982(a)(2)** |
| | : | **28 U.S.C. § 2461(c)** |

**THE GRAND JURY CHARGES:**

**GENERAL INTRODUCTION**

At all times relevant and material to this Indictment

1. Smith Spinal Care Center (hereinafter "SSCC") was a chiropractic office located at 1103 Russell Parkway in Warner Robins, Georgia. J.C.S. was the owner and chiropractor at SSCC.

2. SSCC had a business bank account with Wells Fargo (herein after "SSCC Wells Fargo account").

3. Wells Fargo was a financial institution as defined by Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation. Wells Fargo has locations throughout the United States, including branches in the Middle District of Georgia.

4. CYBER PINECONE LLC (hereinafter "CYBER PINECONE") was a domestic limited liability company organized in Georgia on or about November 5, 2018. CYBER PINECONE was initially registered to **EMILIYA RADFORD'S** husband and was later registered to **EMILIYA RADFORD** beginning on or about February 19, 2020.

1

5. Sometime in or about the fall of 2019, **EMILIYA RADFORD** and CYBER PINECONE were introduced to SSCC through **EMILIYA RADFORD'S** husband who was a patient at SSCC.

6. On or about September 27, 2019, **EMILIYA RADFORD** signed an agreement on behalf of CYBER PINECONE whereby CYBER PINECONE agreed to: (1) develop two custom WordPress websites; (2) provide monthly maintenance; (3) provide Google listings; and (4) update Facebook listing for SSCC. SSCC was responsible for: (1) acquiring Hosting and SSL Certificate from GoDaddy; (2) providing content for the website and social media; and (3) providing access to the hosting and domain accounts so that **EMILIYA RADFORD** could complete the work. In exchange for CYBER PINECONE'S services, SSCC agreed to provide two (2) couples chiropractic appointments a month for **EMILIYA RADFORD** and her husband for twenty-four (24) months.

7. On or about October 4, 2019, **EMILIYA RADFORD** entered a "Digital Marketing Service Contract" with SSCC on behalf of CYBER PINECONE. This contract outlined that CYBER PINECONE would receive the above referenced couples' sessions as well as a total of $2,950.00 per month for ten (10) months. After the ten (10) month period, payment would continue on a month-to-month basis with a 30-day written cancellation notice if SSCC wished to terminate CYBER PINECONE'S services.

8. On or about November 27, 2019, **EMILIYA RADFORD** signed an "Amendment to Digital Marketing Service Contact" with SSCC on behalf of CYBER PINECONE. This contract amended the previous contract for monthly payments of $2,950.00 for a set firm period of 24 months from the date of the amendment. Following those 24 months, payments would continue on a month-to-month basis with a 30-day written cancellation notice if SSCC wished to terminate CYBER PINECONE'S services.

9. On or about March 4, 2020, **EMILIYA RADFORD** signed an "Amendment Digital Marketing Service Contract" with SSCC on behalf of CYBER PINECONE. This contract increased the monthly payments to $3,900.00 per month, to begin February 18, 2020.

10. Sometime in the spring of 2020 J.H., the Office Manager for SSCC, was looking to leave SSCC and recommended **EMILIYA RADFORD** for the position. It was J.H.'s understanding that **EMILIYA RADFORD'S** salary as Office Manager would be increased to cover her marketing duties and that CYBER PINECONE would no longer be paid.

11. On or about April 26, 2020, **EMILIYA RADFORD** was hired to serve as the Office Manager for SSCC. When hired, it was J.C.S.'s understanding and belief that SSCC would no longer pay CYBER PINECONE'S contract and that instead **EMILIYA RADFORD** would perform any of the marketing duties as part of her role as office manager and receive only her office manager salary.

12. On or about May 27, 2020, **EMILIYA RADFORD** was given signatory authority over the SSCC Wells Fargo account. This allowed **EMILIYA RADFORD** to issue checks from the SSCC Wells Fargo account without J.C.S.'s involvement.

13. As part of her duties as office manager, **EMILIYA RADFORD** issued and signed all biweekly payroll checks, including her own. These checks were drawn from the SSCC Wells Fargo account.

14. On or about an unknown date, but no later than June 10, 2020, **EMILIYA RADFORD** had access to J.C.S.'s email password and could access his email account. J.C.S did not know **EMILIYA RADFORD** could access his email account and was unaware that **EMILIYA RADFORD** did, in fact, at times access his email account.

3

15. On or about August 31, 2020, **EMILIYA RADFORD** signed an "Early Contract Termination Agreement" with SSCC on behalf of CYBER PINECONE. This agreement stated that "[d]ue to the Covid19 Pandemic, Cyber Pinecone LLC agrees to release 'Client' from a set firm period of 24 months upon receipt of payment in full for the remainder of the year 2020 and to include January 2021 at the time of signing this Early Contract Termination Agreement. For which at that time (January 2021) set services will proceed on a month to month basis with 30-day cancellation notice. This will result in the total amount of $19,500.00 payment due at the time of signing this agreement."

16. On or about November 29, 2022, J.C.S. signed a letter to CYBER PINECONE giving 30 days' notice of termination to be effective January 1, 2023.

17. On or about December 19, 2022, **EMILIYA RADFORD** submitted her resignation from SSCC as the officer manager. Upon her resignation, none of the CYBER PINECONE contracts were found at SSCC.

## COUNT ONE
### (Bank Fraud)

#### A. Background

1. The allegations contained in paragraphs 1 through 17 of the General Introduction of this Indictment are incorporated by reference as if set forth fully herein.

#### B. Statutory Allegations

2. From on or about May 1, 2020 to on or about December 31, 2022, in the Middle District of Georgia and elsewhere within the jurisdiction of this Court, the Defendant,

**EMILIYA RADFORD**

did knowingly execute a scheme and artifice to obtain money and funds under the custody and control of Wells Fargo, a financial institution, by means of false and fraudulent pretenses and

4

representations, in that **EMILIYA RADFORD** issued checks from the SSCC Wells Fargo account made payable to herself and CYBER PINECONE without authorization, thereby obtaining money and funds from the account without authorization.

### C. The Scheme and Artifice to Defraud

3. As part of the scheme and artifice to defraud **EMILIYA RADFORD** took the following steps:

4. When **EMILIYA RADFORD** was first hired as the office manager for SSCC, the agreement was that she would be paid $18.00 per hour and paid on a bi-weekly basis. Thus, her gross pay for two 40-hour work weeks would have been $1,440. **EMILIYA RADFORD'S** initial payroll checks were for the take-home amount of $1,155.19. At no time did J.C.S. authorize a pay raise for **EMILIYA RADFORD**.

5. During her employment the amount of **EMILIYA RADFORD'S** payroll checks continued to increase. Her final payroll check was for $1,812.94.

6. At times, **EMILIYA RADFORD** issued herself multiple payroll checks drawn from the SSCC Wells Fargo account for the same payroll period. For example, the following checks were issued by **EMILIYA RADFORD** to pay her payroll for the same payroll periods:

| Check number | Date of check | Amount of check | Pay Period per check memo |
|---|---|---|---|
| 42096 | September 7, 2021 | $1,276.75 | 8/28/2021 – 9/10/2023 |
| 42100 | September 7, 2021 | $1,873.55 | 8/28/2021 – 9/10/2023 |
| | | | |
| 42373 | March 24, 2022 | $1,281.97 | 3/12/2022 – 3/25/2022 |
| 42387 | April 1, 2022 | $4,335.37 | 3/12/2022 – 3/25/2022 |
| | | | |
| 42566 | July 27, 2022 | $1,612.93 | 7/16/2022 – 7/29/2022 |
| 42575 | August 1, 2022 | $1,612.93 | 7/16/2022 – 7/29/2022 |

7. **EMILIYA RADFORD** also issued herself checks from the SSCC Wells Fargo account for various checks for working overtime. These checks, as outlined below, were issued separate and apart from her payroll checks:

5

| Check number | Date of check | Amount of check | Memo |
|---|---|---|---|
| 41592 | August 31, 2020 | $750.00 | After Hours Business Support INV0001 |
| 41833 | February 11, 2021 | $427.00 | Overtime Staff Replacement |
| 42040 | August 2, 2021 | $480.00 | Overtime |
| 42053 | August 9, 2021 | $480.00 | Overtime Weekend |
| 42675 | October 20, 2022 | $700.00 | New Staff After Hours Training |

8. **EMILIYA RADFORD** issued the following checks to **EMILIYA RADFORD** from the SSCC Wells Fargo account without authority and permission:

| Check number | Date of check | Amount of check | Memo |
|---|---|---|---|
| 41943 | 5/10/2021 | 210.00 | Healthcare benefit |
| 41965 | 6/1/2021 | 210.00 | Healthcare benefit |
| 41996 | 7/1/2021 | 210.00 | Healthcare benefit |
| 42025 | 8/2/2021 | 210.00 | Healthcare Benefit |
| 42073 | 9/1/2021 | 210.00 | Healthcare Benefit |
| 42117 | 10/1/2021 | 210.00 | Healthcare Benefit |
| 42171 | 11/1/2021 | 210.00 | Healthcare Benefit |
| 42214 | 12/1/2021 | 210.00 | Healthcare Benefit |
| 42252 | 1/1/2022 | 210.00 | Healthcare Benefit |
| 42303 | 2/2/2022 | 210.00 | Healthcare Benefit |
| 42338 | 3/1/2022 | 210.00 | Healthcare Benefit |

9. SSCC did not provide health care benefits to its employees nor did J.C.S. approve such payments to **EMILIYA RADFORD**.

10. As part of her role as office manager, **EMILIYA RADFORD** applied for and obtained various loans for SSCC.

11. On or about August 7, 2020, SSCC received $20,200.00 into the SSCC Wells Fargo account from a Paycheck Protection Program (PPP) loan. The PPP was administered by the Small Business Administration (SBA).

6

12. On or about August 10, 2020, **EMILIYA RADFORD** issued check number 41548 to **EMILIYA RADFORD** from the SSCC Wells Fargo account for $3,150.00 with the memo "Professional Fees: Prep and Filing two SBA Loans."

13. On or about December 16, 2020, SSCC received $17,485.63 into the SSCC Wells Fargo account from the U.S. Department of Health and Human Services for a COVID stimulus payment.

14. On or about December 17, 2020, SSCC received $6,424.50 into the SSCC Wells Fargo account from the U.S. Department of Health and Human Services for a COVID stimulus payment.

15. On or about December 17, 2020, **EMILIYA RADFORD** issued check number 41755 to **EMILIYA RADFORD** from the SSCC Wells Fargo account for $1,554.00 with the memo "Grant Paperwork Preparation Fee."

16. On or about March 5, 2021, **EMILIYA RADFORD** issued check number 41862 to **EMILIYA RADFORD** from the SSCC Wells Fargo account for $1,420.00 with the memo "PPP Loan Prep and Filing."

17. On or about March 30, 2021, SSCC received $28,400.00 into the SSCC Wells Fargo account from a PPP loan.

18. These checks were purportedly for her work in obtaining and securing the loans for SSCC. Not only were these payments not authorized by J.C.S., but in the application materials **EMILIYA RADFORD** indicated that no one was getting paid any consulting fees for assisting with the loans.

19. **EMILIYA RADFORD** issued the following checks to CYBER PINECONE from the SSCC Wells Fargo account without authority and permission:

7

| Check number | Date of check | Amount of check | Memo |
|---|---|---|---|
| 41414 | 6/4/2020 | 3,900.00 | Marketing & Videography June (Contracted) |
| 41465 | 7/2/2020 | 3,900.00 | Marketing & Videography July (Contracted) |
| 41477 | 7/6/2020 | 420.00 | Windows 10 & Software Installation of 3 Computers |
| 41524 | 7/31/2020 | 3,900.00 | Marketing & Videography August (Contracted) |
| 41536 | 8/3/2020 | 575.00 | Professional Fees: Technical Support - Software Installation |
| 41567 | 8/17/2020 | 497.00 | Tech Support 6 Work Stations |
| 41591 | 8/31/2020 | 19,500.00 | Early Contract Termination Agreement |
| 41617 | 9/11/2020 | 495.00 | Technical Support and Computer Maintenance |
| 41647 | 10/5/2020 | 497.00 | Technical Support & Computer Maintenance |
| 41692 | 11/2/2020 | 497.00 | Technical Support and Computer Maintenance |
| 41726 | 12/1/2020 | 497.00 | Technical Support |
| 41771 | 1/2/2021 | 3,900.00 | Marketing Management |
| 41809 | 2/1/2021 | 3,900.00 | Marketing Contract |
| 41847 | 3/1/2021 | 3,900.00 | Marketing Contract |
| 41889 | 3/31/2021 | 2,300.00 | Chiropractors for Fair Journalism wordpress website |
| 41881 | 4/1/2021 | 3,900.00 | Marketing Contract April 2021 |
| 41924 | 5/1/2021 | 3,900.00 | Marketing Contract May 2021 |
| 41950 | 5/17/2021 | 7,500.00 | Invoice #000011 Web Development 75hours *$100 |
| 41951 | 5/17/2021 | 7,500.00 | Invoice #000011 Web Development 75hours *$100 |
| 41963 | 6/1/2021 | 3,900.00 | Marketing Contract |
| 41994 | 7/1/2021 | 3,900.00 | Marketing Contract |
| 42026 | 8/2/2021 | 3,900.00 | Marketing Contract |

8

| 42050 | 8/9/2021 | 12,500.00 | INV 000012 Web Development |
| 42074 | 9/1/2021 | 3,900.00 | Marketing Contract |
| 42118 | 10/1/2021 | 3,900.00 | Marketing Contract |
| 42139 | 10/4/2021 | 8,000.00 | Web Design |
| 42172 | 11/1/2021 | 3,900.00 | Marketing Contract |
| 42192 | 11/3/2021 | 8,000.00 | Additional Custom Coding, Web Development and M |
| 42224 | 11/23/2021 | 500.00 | Afterhours Technical Support |
| 42211 | 12/1/2021 | 3,900.00 | Marketing Contract |
| 42253 | 1/1/2022 | 3,900.00 | Marketing Contract |
| 42266 | 1/3/2022 | 525.00 | Technical Support |
| 42302 | 2/1/2022 | 3,900.00 | Marketing Contract |
| 42340 | 2/23/2022 | 3,900.00 | Marketing Contract March 2022 |
| 42380 | 3/31/2022 | 14,473.00 | Consulting |
| 42315 | 4/1/2022 | 3,900.00 | Marketing Contract April |
| 42414 | 4/13/2022 | 8,750.00 | Invoice: 000014 Technical Support Jan-April |
| 42316 | 5/1/2022 | 3,900.00 | Marketing Contract May |
| 42464 | 5/12/2022 | 875.00 | Technical Support |
| 42484 | 6/1/2022 | 27,300.00 | Marketing Contract June-December Paid in Full |
| 42525 | 6/21/2022 | 850.00 | Technical Support - Windows |
| 42551 | 7/11/2022 | 16,000.00 | Invoice 000016 Amazon KDP Consulting |
| 42579 | 8/3/2022 | 600.00 | tech Support |
| 42618 | 9/2/2022 | 600.00 | Tech Support |
| 42629 | 9/16/2022 | 725.00 | tech Support |
| 42648 | 10/3/2022 | 525.00 | tech Support |
| 42687 | 11/1/2022 | 525.00 | Tech Support |

20. It was J.C.S.'s belief that no payments should have been made to CYBER PINECONE following **EMILIYA RADFORD'S** hiring on as the office manager. Moreover, J.C.S. was not aware of, and did not authorize payment for, the other support and miscellaneous checks that CYBER PINECONE was issued.

9

21. **EMILIYA RADFORD** endorsed all of the aforementioned checks and deposited them into the bank accounts for herself and CYBER PINECONE, which she controlled.

22. As a result of the authorized checks **EMILIYA RADFORD** wrote to herself and CYBER PINECONE from the SSCC Wells Fargo account, SSCC suffered a loss in excess of $200,000.00.

all in violation of Title 18, United States Code, Section 1344(2).

## COUNTS TWO THROUGH FOUR
### (Wire Fraud)
### Introduction

1. The allegations contained in paragraphs 1 through 17 of the General Introduction of this Indictment are incorporated by reference as if set forth fully herein.

### The Scheme

2. That from on or about June 29, 2022, to on or about July 26, 2022, in the Macon Division of the Middle District of Georgia, and elsewhere within the jurisdiction of this Court,

**EMILIYA RADFORD**

devised and intended to devise a scheme to defraud SSCC, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### Manner and Means

It was part of the scheme that:

3. Amazon KDP is Amazon's Kindle Direct Publishing, which allows people to self-publish eBooks and paperbacks.

4. On or about July 11, 2022, **EMILIYA RADFORD** executed a Service Agreement with eCommerce Boss Babes, Inc. (hereinafter "Boss Babes"). Boss Babes is a corporation with its principal place of business in Middletown, Delaware that, at least in part, "help[s] women

10

entrepreneurs create and build a successful ecommerce Amazon KDP business with its done-for-you ecommerce services, consulting, and coaching."

5. On or about July 11, 2022, **EMILIYA RADFORD'S** American Express credit card was charged $15,000.00 for a purchase from Boss Babes. to purchase a "KDP Done-for-you Program."

6. On or about July 11, 2022, **EMILIYA RADFORD** issued a check from the SSCC Wells Fargo account made out to CYBER PINECONE for $16,000.00 with the memo "Invoice 000016 Amazon KDP Consulting." This check was deposited in **EMILIYA RADFORD'S** bank account with Robins Financial Credit Union ending in 6054 (hereinafter "RFCU #6054").

7. On or about July 11, 2022, **EMILIYA RADFORD** knowingly and intentionally created a CYBER PINECONE Service Agreement which purports to contain J.C.S.'s electronic signature. J.C.S. never saw or signed this document. This Service Agreement indicated that J.C.S. "has requested an evaluation and consulting services from Amazon KDP" and had "authorized a third party Consulting firm to provide the research and consulting services." The Services Agreement indicated that J.C.S. would pay CYBER PINECONE $16,000.00 for these services. J.C.S. did not request such services and did not authorize this $16,000.00 payment.

8. On or about July 11, 2022, **EMILIYA RADFORD** made a $11,607.29 payment on her American Express credit card from her RFCU #6054.

9. On or about July 12, 2022, at 9:38 a.m., **EMILIYA RADFORD** sent J.C.S. an email stating "I got your email with the signed contract for Amazon KDP Consulting with Cyber Pinecone LLC, I wanted to inform you that I sent off the check for $16,000 as per your request."

10. On or about July 12, 2022, also at 9:38 a.m., **EMILIYA RADFORD** utilized J.C.S.'s email account to send an email from J.C.S.'s email account to **EMILIYA RADFORD'S** email

account stating "OK." **EMILIYA RADFORD** printed this email at 9:39 a.m. and retained it at her home.

11. On or about July 18, 2022, **EMILIYA RADFORD** self-published "The cat owner's handbook- understanding the nature, deciding on a kitten, preparing your home and more: South Maine Coons Cattery." This book was available for sale on Amazon.

12. On or July 21, 2022, **EMILIYA RADFORD** made $2,414.47 payment on her American Express credit card from her RFCU #6054.

13. On or about July 26, 2022, **EMILIYA RADFORD** made $1,710.89 payment on her American Express credit card from her RFCU #6054.

14. Thus, **EMILIYA RADFORD** used funds from the SSCC Wells Fargo account to assist in her own self-publishing ventures.

## Execution of the Scheme

15. On or about each of the dates set forth below, in the Middle District of Georgia, defendant,

### EMILIYA RADFORD

for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Description of wire |
|---|---|---|
| TWO | July 11, 2022 | An electronic signature by **EMILIYA RADFORD**, signed in Warner Robins, Georgia, on a Services Agreement with Boss Babes, a corporation with its principal place of business in Middletown, Delaware. |
| THREE | July 12, 2022 | An email sent by **EMILIYA RADFORD** in Warner Robins, Georgia to J.C.S. at 9:38 a.m. stating "I got your email with the signed contract for Amazon KDP Consulting with Cyber Pinecone LLC, I wanted to inform you that I sent off the check for $16,000 as per your request." This email was sent via GoDaddy whose server is located outside the state of Georgia. |

| FOUR | July 12, 2022 | An email sent from J.C.S.'s email account in Warner Robins, Georgia to **EMILIYA RADFORD'S** email account at 9:38 a.m. stating "OK." This email was sent via GoDaddy whose server is located outside the state of Georgia. |

all in violation of Title 18, United States Code, Section 1343.

## COUNTS FIVE THROUGH TEN
### (Federal Program Theft)

The allegations contained in paragraphs 1 through 17 of the General Introduction of this Indictment are incorporated by reference as if set forth fully herein.

That on or about the dates alleged below, in the Macon Division of the Middle District of Georgia, and elsewhere within the jurisdiction of this Court,

**EMILIYA RADFORD**

being an agent of SSCC, said organization receiving in the one year periods beginning from May 1, 2020 through April 30, 2021 and from May 1, 2021 through April 30, 2022, benefits in excess of $10,000.00 under the Federal Economic Injury Disaster Loan (EIDL) program, embezzled, stole, obtained by fraud, and without authority knowingly converted to the use of a person not the rightful owner, property worth at least $5,000.00 and owned by and under the care of such SSCC, such property described below:

| COUNT | DATE | PROPERTY |
|---|---|---|
| FIVE | June 24, 2020 | $4,421.42 of SSCC funds used to purchase the following items from the Apple Online Store:<br><br>Apple, MacBook Pro, Serial Number C02CX4NAMD6T; and<br><br>AirPods Pro, Serial Number GX4CV750LKKT,<br><br>said items being delivered to **EMILIYA RADFORD'S** residence. |

13

| SIX | June 24, 2020 | $5,164.73 of SSCC funds used to purchase the following items from the Apple Online Store:<br><br>HomePod, Serial Number DLXW9J52HQK8;<br><br>MacBook Pro, Serial Number C02ZK4M8MD6P; and<br><br>MacBook Pro, Serial Number C02ZK1CBMD6P,<br><br>said items being delivered to **EMILIYA RADFORD'S** residence. |
|---|---|---|
| SEVEN | August 3, 2020 | $40.66 of SSCC funds used to purchase the following item from the Apple Online Store:<br><br>USB-C to USB Adapter,<br><br>said item being delivered to **EMILIYA RADFORD'S** residence. |
| EIGHT | September 16, 2020 | $212.93 of SSCC funds used to purchase the following item from the Apple Online Store:<br><br>IPod Touch, Serial Number F6KDD060M93F,<br><br>said item being delivered to **EMILIYA RADFORD'S** residence. |
| NINE | February 8, 2022 | $58.15 of SSCC funds used to purchase the following item from Stamp Shop Central:<br><br>a business stamp for South Maine Coons Corp., another business entity owned by **EMILIYA RADFORD**,<br><br>said item being delivered to **EMILIYA RADFORD'S** residence. |
| TEN | April 20, 2022 | $1,175.93 of SSCC funds used to purchase the following item from the Apple Online Store:<br><br>IPad Pro, Serial Number KD751FPWPD,<br><br>said item being delivered to **EMILIYA RADFORD'S** residence. |

all in violation of Title 18, United States Code, Section 666(a)(1)(A).

## FORFEITURE NOTICE
### (18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(2), and 28 U.S.C. § 2461(c) - Criminal Forfeiture)

1.  The allegations contained in Counts One through Ten of this Indictment are hereby re-alleged and incorporated by reference into this Notice for the purpose of alleging forfeiture to the United States of America, pursuant to the provisions of Title 18, United States Code, Section 982(a)(2)(A); and/or Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c).

2.  Upon conviction of the offense(s) in violation of Title 18, United States Code, Section 1344(2) as set forth in Count One; Title 18, United States Code, Section 1343 as set forth in Counts Two through Four; and/or Title 18, United States Code, Section 666(a)(1)(A) as set forth in Counts Five through Ten of this Indictment,

### EMILIYA RADFORD,

shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation(s); and/or any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s) pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 18, United States Code, Section 2461(c), including, but not limited to, a money judgment in an amount to be determined.

3.  If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a)   cannot be located upon exercise of due diligence;

    (b)   has been transferred, sold to or deposited with, a third person;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be subdivided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c), through Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) and 28 U.S.C. § 2461(c).

A TRUE BILL.

/s/ Foreperson of the Grand Jury
FOREPERSON OF THE GRAND JURY

PETER D. LEARY
UNITED STATES ATTORNEY

Presented by:

ELIZABETH S. HOWARD
ASSISTANT UNITED STATES ATTORNEY

Filed in open court this 14 day of June, 2023.

Deputy Clerk